## Commonwealth v. Sherman

*Frank J. Docktor*, assistant district attorney, for Commonwealth.

*Paul N. Barna*, for defendant.

ACHESON, J., March 27, 1943.—On February 1, 1943, the grand jury returned a true bill to an indictment charging the defendant with operating a motor vehicle on a public highway, the defendant not

being then and there lawfully licensed as an operator of a motor vehicle or as a learner—an operator's license and operator's privilege theretofore duly issued to the defendant having been lawfully suspended and withdrawn, and before such operating privilege had been reinstated. To this indictment the defendant on February 19, 1943, entered a plea of not guilty, and, the case having been called for trial, the defendant exercised the privilege accorded to him under the provisions of the Act of June 11, 1935, P. L. 319, and, by a written paper signed by the defendant, waived his right to a trial by jury. Defendant's attorney, the district attorney, and the trial judge consented to this waiver and the case was tried before the court without a jury under the provisions of the act above referred to.

Testimony was introduced on behalf of the Commonwealth by calling three witnesses whose testimony appears in the transcript filed herewith. The defendant offered no testimony, but at the close of the Commonwealth's case moved "for the dismissal of the indictment in the case and dismissal of the charge against the defendant", which, in effect, was a motion for binding instructions to acquit the defendant, filed at the close of the Commonwealth's case. After argument by defendant's counsel, the court overruled the defendant's motion, but gave defendant's counsel an opportunity to be heard again at the close of the case in the event that the defendant offered any testimony in his own behalf. No testimony was offered by the defendant at the close of the case. From the testimony taken, the court makes the following

*Findings of fact*

1. On January 8, 1943, Albert H. Black, prosecutor, made an information before Raymond J. Curley, justice of the peace of Washington County, charging the defendant with unlawfully operating a motor vehicle on a public highway *after* the defendant's operating

privilege had been suspended or revoked, and *before* such operating privilege had been reinstated.

2. Following the making of the information referred to in 1 above, the defendant was arrested and at a hearing before the justice of the peace on January 11, 1943, entered a plea of guilty to the charge and was held for court to answer the charge embraced in the information.

3. On February 1, 1943, a bill of indictment was laid before the grand jury in which the defendant was charged with the offense set forth in the information hereinabove referred to. On February 1, 1943, the grand jury returned a true bill to this indictment.

4. On June 21, 1935, a learner's permit was issued to the defendant, Fred Sherman, by the Department of Revenue, authorizing the defendant to operate a motor vehicle for a period of 60 days from the date of the issuance of such permit, in accordance with the provisions of section 606 of The Vehicle Code of May 1, 1929, P. L. 905. This learner's permit by its terms expired on August 26, 1935.

5. On June 25, 1935, the defendant was arrested on a charge of lending his permit to one not entitled thereto. This offense occurred in Allegheny County. The defendant pleaded guilty to this charge and, in default of payment of fine and costs, was sentenced to 10 days in the Allegheny County jail.

6. Following the sentencing of the defendant to 10 days in the Allegheny County jail, as referred to in the preceding numbered paragraph, a hearing was held at Washington, Pa., to investigate the charge against the defendant of lending his learner's permit to one not entitled thereto. This hearing was held before Lin Stone, inspector, who recommended that the learner's permit of the defendant, Fred Sherman, be suspended for three months and that the defendant's name be placed on the prohibitory list.

7. On August 13, 1935, the Bureau of Highway Patrol and Safety notified the defendant that his privilege to operate a motor vehicle had been withdrawn; the reason for such withdrawal was defendant's unlawfully permitting the use of his operator's license by one not entitled thereto. The term of the withdrawal was three months.

8. On April 29, 1936, the grand jury of Washington County then in session returned a true bill to an indictment charging that the defendant on March 30, 1936, wilfully and unlawfully operated a motor vehicle on a public highway, the defendant not then and there being lawfully licensed as an operator of a motor vehicle or as a learner, an operator's license and operator's privilege theretofore issued to the defendant having then and there been lawfully suspended and withdrawn, and the defendant, following such suspension and withdrawal, not having furnished to the Secretary of Revenue of the Commonwealth lawful proof of his financial responsibility.

9. On May 4, 1936, the defendant entered a plea of guilty to the indictment, referred to in the preceding numbered paragraph, and was sentenced by the court to pay the costs and a fine of $25, the said fine to be paid within 30 days from the date of the imposition of said sentence.

10. After the imposition on the defendant of the sentence, referred to in the preceding numbered paragraph hereof, the Bureau of Highway Patrol and Safety, on June 25, 1936, notified the defendant that his privilege to operate a motor vehicle had been withdrawn, effective on June 25, 1936; the reason for such withdrawal was a charge against the defendant of operating a motor vehicle during a suspension period. The term of the said withdrawal of the operating privilege was one year from June 25, 1936.

11. On January 6, 1942, an information was made before L. L. Bane, justice of the peace, of Coal Center,

Pa., charging that the defendant on December 25, 1941, operated an automobile without a license in violation of the provisions of section 601 of The Vehicle Code of 1929. The defendant, being arrested, entered a plea of guilty to that charge and paid a fine and costs, and on March 18, 1942, was sentenced by the magistrate to pay a fine of $10 and the costs, which the defendant paid.

12. On or about April 24, 1942, a notice was sent to the defendant calling his attention to the fact that he had been involved in a motor vehicle violation on December 25, 1941, and that it would be necessary for the defendant to appear for a hearing before a representative of the Department of Revenue, on May 13, 1942, at the Washington County Court House. In this notice, the defendant was advised that a failure on his part to appear for that hearing would result in no further consideration being given to the restoration of his operating privilege.

13. At the hearing held by Inspector Wright at Washington, Pa., on May 13, 1942, the defendant did not appear, and the inspector recommended an indefinite suspension of the defendant's operating privilege.

14. On June 23, 1942, the Bureau of Highway Safety sent to the defendant an official notification of withdrawal of his motor vehicle privileges, the reason for withdrawal being "no operator's license—driving while under suspension", and failure to appear for a hearing on May 13, 1942.

15. The operating privileges formerly granted to the defendant, Fred Sherman, and subsequently suspended or revoked, have never been restored to the defendant, and, on November 25, 1942, the defendant, Fred Sherman, had no operating privileges granted in accordance wtih the provisions of The Vehicle Code of the Commonwealth of Pennsylvania.

*Discussion*

Under the provisions of section 606 of The Vehicle Code of May 1, 1929, P. L. 905, in force at the time the learner's permit was issued to the defendant in 1935, the Department of Revenue was authorized to issue a learner's permit entitling the applicant while having such permit in his immediate possession to operate a motor vehicle upon the highway for a period of 60 days from the issuance of such permit, when accompanied by a licensed operator actually occupying a seat beside the holder of the learner's permit. This section was amended by the Act of June 29, 1937, P. L. 2329, by increasing the period during which the learner might operate a motor vehicle to 90 days.

Under the provisions of section 615(*b*) of The Vehicle Code of May 1, 1929, as amended by the Act of June 22, 1931, P. L. 751 (which has subsequently also been amended by the Act of June 29, 1937, P. L. 2329, and by the Act of June 27, 1939, P. L. 1135), the Secretary of Revenue was authorized to suspend the operator's license or learner's permit of any person after a hearing before the secretary or his representative, or upon failure of such person to appear at such hearing whenever the secretary might find upon sufficient evidence "That such person has committed any violation of the motor vehicle laws of this Commonwealth."

Section 620 of The Vehicle Code of May 1, 1929, P. L. 905, deals with the subject of "Violation of license provisions", and as this act was originally passed it was provided in section 620 (*h*) that it was unlawful for any person "to operate any motor vehicle upon the highways of this Commonwealth, after operator's license or learner's permit is suspended or revoked."

By the Act of June 22, 1931, P. L. 751, section 620 (*h*) of The Vehicle Code of 1929, supra, was amended by striking out the words "operator's license or learner's

permit" and substituting therefor the words *"operating privilege."* Section 620(*h*) of The Vehicle Code of 1929, as amended by the Act of 1931, supra, was further amended by the Act of June 29, 1937, P. L. 2329, so as to read as follows:

"To operate any motor vehicle upon the highways of this Commonwealth, after the operating privilege is suspended or revoked, *and before such operating privilege has been reinstated."* (Italics supplied.)

At the trial of the case defendant's counsel contended that the only offense of which the defendant was guilty in operating a motor vehicle on November 25, 1942, was operating a motor vehicle upon a highway *without a license,* as prohibited by section 601 of The Vehicle Code of 1929, as amended. Defendant's counsel relied in support of his position on the case of Commonwealth v. Monk, 49 Dauph. 120. In that case the defendant was convicted under section 620(*h*) of The Vehicle Code of operating a motor vehicle during a period of suspension of his operating privileges, and motions were filed in arrest of judgment and for a new trial. The court granted both motions, stating that the court erred in finding the defendant guilty of operating a motor vehicle during a suspension of an operator's privilege as, under the evidence, it was clear that the defendant "was operating a motor vehicle *without an operator's license."* In that case, an information had been made on November 14, 1939, charging the defendant with a violation of section 620(*h*) of The Vehicle Code, by operating a motor vehicle during a period of suspension of operating privileges. The case was tried by the court without a jury, and it was proved that the defendant had operated a motor vehicle upon a highway, and, upon being stopped by an officer and asked for his license card, the defendant stated his license card was at home and that prior to that date he had used the license card of another man. The defendant contended that he could not

be convicted of the charge of operating a motor vehicle during a period of suspension of operating privileges for the reason that he never had had such privilege and that, under the evidence, if he was guilty of any crime at all, it was that of operating a motor vehicle without a license. A transcript of the order of the Secretary of Revenue suspending the defendant's privilege to apply for an operator's license or a learner's permit for a period of three months was, over the defendant's objection, introduced in evidence, being marked exhibit "A". In his opinion in that case, Fox, J., says (p. 122) :

"The exhibit 'A' certified copy of the record of the Department of Revenue shows that on September 18, 1939, there was a suspension for three months, but it does not say what was suspended; the reason therein is, that the defendant was 'operating a motor vehicle without an operator's license; displaying as one's own an operator's license belonging to another.' There was a department hearing and the record, admitted, does not disclose that there was a suspension of an operator's privilege and that the same was suspended and revoked by the department and that it was not restored. It does show that defendant was operating a motor vehicle without an operator's license."

It is clear from that part of Judge Fox's opinion quoted above that the record in the Monk case did not show that there had been any suspension of the operator's privilege or that it had been suspended or revoked by the department, and had not been restored. The decision of Judge Fox that, under the facts in that case, the defendant, Monk, could not be convicted of a violation of 620 (*h*) of The Vehicle Code was clearly right.

In Commonwealth v. Seney, 26 D. & C. 600, Judge Smith of Susquehanna County held that (syllabus) :

"Where a motor vehicle operator, whose license has been suspended for a period of one year, operates a motor vehicle after expiration of the period of sus-

pension but without obtaining a new license, he is not guilty of a violation of section 620 (*h*) of the Motor Vehicle Code of 1929, as amended, prohibiting the driving of a motor vehicle after suspension or revocation of an operator's license, but only of section 601 of the code as amended, making it unlawful to operate a motor vehicle without a license."

The decision of Judge Smith in the Seney case was rendered, however, prior to the amendment of 1937 to section 620 of The Vehicle Code hereinabove referred to.

In Commonwealth v. Gernert, 33 D. & C. 620, the defendant drove a motor vehicle without being licensed to drive. He had had a privilege theretofore granted to him to drive a motor vehicle, but that privilege had been revoked on March 28, 1935, for a period of one year. He was arrested on February 12, 1938, on a charge of operating a motor vehicle after his operating privileges had been revoked and, having been committed to jail on an alderman's warrant, he presented a petition for a writ of habeas corpus to secure his discharge. It was the defendant's contention that, although he had no license at the time of his arrest and had not had any license to drive a motor vehicle since the date of the revocation of his license in 1935, his offense was not a misdemeanor but merely cognizable by a summary proceedings before a magistrate as provided for by section 601 of The Vehicle Code.

In his opinion, supporting his order dismissing the defendant's petition to be released, Judge Shanaman of Berks County calls attention to the Act of June 22, 1931, P. L. 751, amending section 620 (*h*) of The Vehicle Code of 1929 by striking out from that paragraph the words "operator's license or learner's permit" and substituting therefor the words "operating privilege". He also calls attention to the amendment to this section as effected by the Act of June 29, 1937, P. L. 2329, by which the words "and before such operating privi-

lege has been reinstated" were added at the end of clause (*h*) of section 620. Judge Shanaman then says (p. 622):

"We are of opinion that an interpretation of the language of the statute in accordance with its natural meaning and with the strictness proper to the construction of a penal statute, leads to the conclusion that one who after losing his license through revocation or suspension, and not having enjoyed a reinstatement in the privilege of driving a motor vehicle, nevertheless at any time thereafter drives without a license so to do, is guilty of a violation of section 1 of the Act of 1937, amending section 620(*h*) of The Vehicle Code, supra, as amended by the Act of 1931, supra. The legislature by the amendment of 1937 seems clearly to have indicated such intent. Certainly, one who has had the privilege of driving revoked for cause, and who has either been unable or has neglected to obtain a reinstatement of the privilege, is in a different class of delinquents, if he chooses to drive without a license, from a person who has never had his license revoked. The sole point of law raised by defendant, namely, that on the admitted facts defendant cannot be found guilty of driving after revocation of his operating privilege, is therefore overruled."

In Commonwealth v. Buleski, 39 D. & C. 496, the defendant was indicted for operating a motor vehicle upon the highway without having then and there a proper license to operate the same, "the operator's license of the said John Buleski having then and there been suspended and revoked and not reinstated." On the trial of the case it appeared from the defendant's own admission that he had had an operator's license; that the license had been suspended for 90 days; that the 90-day period had expired; that he had never made an application for restoration; that his license had not been restored; and that he had driven a car upon a highway. The jury convicted the defendant and motions

were made for a new trial and in arrest of judgment, both of which motions were discharged by Judge Hoban of Lackawanna County. In his opinion, Judge Hoban said (p. 497), that some objection had been taken to the court's failure to charge the jury on the question of reasonable doubt, but that no question of reasonable doubt was involved in the case because the defendant's own admission from the witness stand made out a complete and unanswerable case against him. He also said there had been no necessity for charging the jury on the difference between the suspension of an operator's license and the revocation thereof, as the only facts pertinent were the *suspension* of the operator's license. In this case exception had been taken to the failure of the court to charge the jury that the offense had taken place after the suspension period had expired. Judge Hoban, in his opinion, stated that the court was not required so to charge as it was immaterial whether the offense took place *before* or *after* the suspension period had expired. He then said (p. 497):

"The offense charged is that of operating a motor vehicle after the license had been suspended and *not reinstated.* By his own admission defendant had failed to apply for reinstatement. . . the defense seems to rely on the theory that, because the offense charged took place after the suspension period had expired, the indictment was not warranted. The offense charged is a direct violation of section 620(*h*) of The Vehicle Code of May 1, 1929, P. L. 905, and is charged in language which could not possibly be mistaken. Defendant seems to think that the language of the indictment was vague because it used both the words 'suspended' and 'revoked', but this could in no way mislead defendant because he knew that his license had been suspended and had no hesitation in admitting it. The mere fact that the period of suspension had expired does not change the situation caused by his violation of the code

by driving a motor vehicle after such a suspension, before the operating privilege has been reinstated. Hence, the motion in arrest of judgment is without merit."

In Commonwealth v. Krupa, 40 D. & C. 572, the defendant was prosecuted for violating section 620(*h*) of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 29, 1937, P. L. 2329, and by agreement the defendant was tried before the court without a jury, under the provisions of the Act of June 11, 1935, supra. In that case, the defendant's license had, on February 10, 1938, been suspended for 30 days. He made no application for a license in either 1939 or 1940, and was arrested on November 20, 1940, while operating a truck on the highway. The question raised by the defendant on the trial was whether he was guilty of the offense charged by the Commonwealth (a misdemeanor) or whether he was merely guilty of operating a car without a license (a matter of summary conviction).

In his opinion in this case, overruling a motion in arrest of judgment, after the defendant had been convicted by the trial judge, Judge Knight of Montgomery County refers to an earlier case decided by the court of Montgomery County (Commonwealth v. Ivans) in which case the defendant had been indicted under section 620 of The Vehicle Code. In the earlier case, the defendant had had his operating privilege suspended for one year and was charged with operating a motor vehicle in violation of section 620(*h*) of The Vehicle Code, about *two* years after the suspension period had expired. In the earlier case, the Montgomery County court had held that, the period of suspension having expired before the date when the defendant had operated his car, the defendant could not be indicted under paragraph (*h*) of section 620, and was guilty only of a violation of section 601, making it unlawful to operate a motor vehicle without a license. After referring to

this earlier case, Judge Knight then calls attention to the amendment of section 620 (*h*) by the Act of June 29, 1937, P. L. 2329, to read as follows:

"(*h*) To operate any motor vehicle upon the highways of this Commonwealth, after the operating privilege is suspended or revoked, *and before such operating privilege has been reinstated.*" (Italics supplied.)

In his opinion overruling defendant's motion in arrest of judgment, Judge Knight says (p. 573):

"To reinstate is to restore, according to Webster's International Dictionary, and it would appear that the legislature intended that some affirmative act must be done by the Secretary of Revenue, in restoring the operating privilege. It follows that, after the operating privilege is suspended or revoked, it must be restored before an operator may drive a motor vehicle without violating section 620 (*h*), above quoted. . . Some additional light is shed upon the question before us by the Uniform Automobile Liability Security Act of May 15, 1933, P. L. 553, as amended by the Act of June 25, 1937, P. L. 2097, which provides, inter alia, in section 7, that, whenever the Secretary of Revenue shall revoke or suspend the operating privilege, he may require the holder of the license or operating privilege to furnish proof of financial responsibility before such license or operating privilege shall be renewed or reinstated or continued. The amended act was passed at the same session of the legislature at which section 620 (*h*), as above quoted, was amended.

"It seems clear that the legislature intended to place those whose operating privileges had been suspended in a different class from those who never lost their operating privileges through suspension.

"The operating privilege of defendant was not automatically restored to him after the expiration of the 30-day suspension in February 1938. It was his duty to have his operating privilege reinstated if he desired to drive a motor vehicle, and the Secretary of Revenue

could have required proof of financial responsibility before reinstating the operating privilege.

"We are of the opinion that the legislature, in amending section 620.($h$), intended that anyone operating a motor vehicle after his operating privilege had been suspended, or revoked, and not reinstated, should be guilty of a misdemeanor, regardless of the fact that the suspension or revocation period may have expired. It follows that defendant was properly found guilty."

In Commonwealth v. Healey, 149 Pa. Superior Ct. 497, the defendant was indicted for operating a motor vehicle upon the highways after his operating privilege had been suspended and before it had been reinstated. The defendant was convicted and sentenced. After filing motions in arrest of judgment and for a new trial, which were refused, the defendant took an appeal to the Superior Court, which affirmed the judgment of the court below. In March 1941, the defendant's operator's license was suspended. From this order of suspension the defendant, on April 24th, took an appeal to the common pleas court, where a hearing de novo was held, and on June 9, 1941, the common pleas court sustained the order of suspension. The defendant was arrested on May 26, 1941, for operating his car on a highway after his operating privilege had been suspended and before it had been reinstated. He was indicted on September 15, 1941, and later found guilty. Section 616 of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 27, 1939, P. L. 1135, sec. 10, gave to a person whose operator's license or learner's permit had been suspended, or who had been deprived of the privilege of applying for such operator's license or learner's permit, a right to appeal, within 30 days after such suspension by the Secretary, for a hearing in the common pleas court. On his appeal to the Superior Court the defendant contended that the appeal to the common pleas from the order of suspension automatically stayed the suspension by the

Secretary of Revenue without a special allowance of a supersedeas, and that, consequently, he had the privilege of operating his automobile pending the disposition of his appeal from the suspension. The Superior Court held in this case that the appeal to the common pleas from an order of suspension did not operate as a supersedeas without an express order from the court to that effect.

In the opinion of the Superior Court in this case, Judge Rhodes said (pp. 501, 502):

"The result to which defendant's theory leads is clear. It would permit an operator whose license had been suspended under the provisions of the act to continue the operation of his motor vehicle for thirty days after the suspension no matter how flagrant the operator's conduct had been which brought about the suspension, and if there was an appeal such operation could be continued until the court of common pleas finally acted. Such a result would be both unreasonable and contrary to public safety. . . Defendant contends that there was error in the refusal of the trial judge to permit defendant to testify to alleged extenuating circumstances under which he operated his motor vehicle at the time of his arrest. It is argued that this was a proper matter for the jury to pass upon in determining his guilt or innocence under the statute. Defendant admitted that he operated his automobile after his operating privilege had been suspended and before it was reinstated. By his own admission defendant did that which the statute declares to be unlawful and a misdemeanor. The offered testimony was not relevant for a determination of a violation under section 620."

In the present case, the defendant did not take the witness stand and testify in his own behalf, and therefore there is, in the record, no admission by the defendant of his operating the automobile on a highway. The

testimony in the case, however, clearly establishes beyond any reasonable doubt that the defendant did so operate his motor vehicle upon a highway *after* his license had been suspended and *"before* such operating privilege" had been reinstated.

In the present case, defendant was granted a learner's permit on June 21, 1935, which by its terms would have expired on August 26, 1935. On August 13, 1935, the Bureau of Highway Patrol and Safety notified the defendant that his operating privilege had been withdrawn by reason of his violating one of the provisions of The Vehicle Code. On August 29, 1936, the defendant was indicted by the grand jury of this county for wilfully operating a motor vehicle upon a highway without lawful license, "an operator's license and operator's privilege theretofore issued to the defendant having been suspended and withdrawn." To this indictment the defendant entered a plea of guilty and was sentenced by the court. After this sentence had been imposed the Bureau of Highway Patrol and Safety on June 25, 1936, withdrew the defendant's operating privilege, the term of such withdrawal being one year from June 25, 1936. On January 6, 1942, the defendant was prosecuted before a magistrate for operating a motor vehicle without a license. He pleaded guilty and paid the fine imposed. On June 23, 1942, the Bureau of Highways notified defendant of the withdrawal of his motor vehicle privileges. The operating privileges granted to the defendant on June 21, 1935, under the learner's permit then issued to the defendant (which privileges had been suspended or revoked as hereinabove set forth) had never been restored to the defendant and on November 25, 1942 (the date alleged in the indictment), the defendant had no operating privilege granted in accordance with the provisions of The Vehicle Code of the Commonwealth of Pennsylvania.

There is ample evidence in this case to justify the conviction of the defendant of the charge embraced in the indictment.

## Verdict

And now, March 27, 1943, the court finds the defendant, Fred Sherman, guilty as indicted.